UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
HOP HOP PRODUCTIONS, INC.,
and FALEENA HOPKINS,                                    1:18-cv-04670-AKH

                PLAINTIFFS,

      - against -

KEVIN KNEUPPER, TARA CRESCENT,
and JENNIFER WATSON,

               Defendants.
-----------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF PLAINTIFFS MOTION**


Christopher Cardillo
Cardillo Law, P.C.
9728 3rd Avenue, Suite 308
Brooklyn, New York 11209
T. 646-398-5025
F. 646-365-8833
C. 347-309-0000
Email: cardilloesq@gmail.com

TABLE OF CONTENTS

PAGE

I.     PRELIMINARY STATEMENT……………………………………………...1

     A.     Defendants Opposition is Insufficient as a Matter of Law……………….3
           1.     The Anonymous Submissions……………………………………4
           2.     The Declaration of the Defendant Watson…………………………5
           3.     The Declaration of the Defendant Crescent………………………6
           4.     The Declaration of the Non-Party Reid……………………………7
           5.     The Failure of the Defendant Kneupper to Submit a Declaration….8

     B.     Plaintiffs have a Clear and Substantial Likelihood of
           Prevailing on the Merits on all of Their Claims…………………………8
           1.     Plaintiff's Claims are not Barred by *Roger v. Grimaldi*……………..8
           2.     The Infringing Marks are Actually and Intentionally Misleading….10
           3.     Plaintiffs' Word Mark is Valid and Enforceable,
                 as Plaintiffs have used a common word "cocky" in
                 an "Arbitrary" way to describe a series of
                 e-book romance novels……………………………………………11
           4.     Plaintiffs' Stylized Mark is Valid and Enforceable,
                 As it is Distinctive in Style and Appearance………………………12
            5.     Plaintiffs are Likely to Prevail as Against
                 the Defendant Crescent and Watson………………………………12
            6.     Plaintiffs are Likely to Prevail as Against
                 the Defendant Kneupper………………………………………………13
                  a.     This Court Has Concurrent Jurisdiction
                     over the Petition and Should decide the
                       Issues Presented…………………………………………13
                  b.     Defendant Kneupper's Petition was
                       Made in Bad Faith, is Without Merit,
                         and Defendant Kneupper has no
                       Standing to Maintain Same…………………………………13
     C.     Defendants by Their Actions and Submissions are on Notice
           and have Waived any Defenses Based upon Personal Jurisdiction…………16.
     D.     There is an Inherent Conflict of Interest Created
           by the use of Cocktales to fund the Defendants Legal Defense……………..17
     F.     The Harm to the Plaintiffs is Immediate,
           On-Going, Irreparable, and Exponential…………………………………18
II. Conclusion ………………………………………………………………………20

**Table of Authorities**

| Cite | Page |
|---|---|
| **Statutes, Rules, Texts and Manuals** | |
| 28 U.S.C. § 1746 | 5, 6 |
| Fed.R.Evid. 801(c) | 8 |
| **Cases** | |
| *Versace v. Versace*, 2003 WL 22023946, at 7 (S.D.N.Y. 2003) | 2, 11 |
| *Paddington Corp v. Attiki Importers & Distrib.*, 996 F.2d 577 at 585 | 2 |
| *Doe v. Smith*, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) | 4 |
| *Doe v. Del Rio*, 241 F.R.D. 154, at 157 (S.D.N.Y. 2006) | 4, 5 |
| *Free Speech v. Reno*, 98 Civ. 2680 (MBM), 1999 WL 47310, at 2 (S.D.N.Y. Feb. 1, 1999) | 4 |
| *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) | 5 |
| *Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137, at 142 (S.D.Ind. 1996) | 5 |
| *Doe v. Bell Atlantic Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D.Mass. 1995) | 5 |
| *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, at 488 (2d Cir. 2013) | 6, 7 |
| *United States v. $7,300 in U.S. Currency*, WL 21496858, at 4 (S.D.N.Y. 2003) | 8 |
| *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 493–94 (2d Cir. 1989) | 9, 10 |
| *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir.), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989) | 9 |
| *Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir.1989) | 9, 10 |
| *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) | 10 |
| *Syler v. Woodruff*, 610 F. Supp. 2d 256, 265 (S.D.N.Y. 2009), at 265 | 10 |
| *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 523 (S.D.N.Y. 2009) | 11 |
| *In re Cooper*, 254 F.2d at 615 | 12 |
| *Estes v. Worthington*, 31 F. 154, 156 (C.C.S.D.N.Y. 1887) | 12 |
| *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075–76 (2d Cir. 1993) at 1076 | 12 |
| *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415 (W.D.N.Y. 2010) | 12 |
| *Sonora Cosmetics, Inc. v. L'Oreal S.A.*, 631 F. Supp. 626, 629 (S.D.N.Y.) | 13 |
| *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) at 241 | 13 |
| *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 432 (N.D.N.Y. 2007) | 18 |
| *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) | 19 |
| *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008) | 19 |
| *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008) | 20 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

HOP HOP PRODUCTIONS, INC.,                           Civil Action No.:
and FALEENA HOPKINS,

                              PLAINTIFFS,             **MEMORANDUM OF
                                                     LAW IN FURTHER
                                                     SUPPORT OF
          - against -                                OF PLAINTIFFS'
                                                     MOTION**
KEVIN KNEUPPER, TARA CRESCENT,
and JENNIFER WATSON,

                              Defendants.
-----------------------------------------------------------------------X

          Plaintiffs, HOP HOP PRODUCTIONS, INC. ("Hop") and FELEENA HOPKINS

("Hopkins" and collectively "Plaintiffs"), by their attorneys C. Cardillo, P.C., as and for a Reply

Memorandum of Law, submitted in further support of PLAINTIFFS' instant motion, respectfully

submit the following:

**I.      PRELIMINARY STATEMENT**

          Defendants' essential arguments are as follows: (1) that the word *cocky* can not act as a

"single source identifier in the field of romance novels" and (2) that there is an extensive

preexisting prevalence of the use of the word *cocky* in the context of romance novels which

precludes protection of the Plaintiffs' trademarks. In espousing these arguments, the Defendants

ignore entirely the protection these Plaintiffs seek, and are entitled to.

          In citing a long list of books containing the word *cocky*, Defendants intentionally and

specifically ignore precedent which permits the specific use of the word *cocky* (the "Word

Mark") as a means of identifying a *book series*. Defendants also entirely ignore the "arbitrary"

nature of the Word Mark and its use to specifically distinguish not just a book series, but a *series

of romance novels*.  In fact, every book cited by the Defendants (with the exception of one series,

which is not applicable to this matter[1]) is a standalone book, not a *series*; and which has not acquired secondary meaning.  In short, Despite the "anxiety [that this has created] in the romance community,"[2] Plaintiffs seek a very limited and specific form of protection in regard to the Word Mark.

Defendants also conveniently ignore the substantial similarity between the infringing marks and the Stylized Mark.[3] And the *actual confusion*[4] which has been created as a result of their illegal use in commerce. Not to mention that "[u]nder the Lanham Act, the fact that a mark is registered by its owner is *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product." *Versace v. Versace*, 2003 WL 22023946, at 7 (S.D.N.Y. 2003) (*citations and internal quotation marks omitted*). Nor do they acknowledge that the Stylized Mark is strong as it is "uniquely intended to indicate a product's source…[this is true] whether or not the consumer is familiar with the mark or knows the source." *Id*., (citing and quoting *Paddington Corp v. Attiki Importers & Distrib.*, 996 F.2d 577 at 585) and that the Stylized mark has been the source identifier with respect to the sale of nearly 600,000 books in the series.

Moreover, claims of prejudicial delay and associated waiver are without merit; as they ignore the fact that this action was only necessitated by the refusal of the Defendant Tara Crescent ("Crescent") to cease and desist the use of the Plaintiffs' trademarks. And that the demand to do so, and that refusal from Crescent, was contemporaneous with Crescent's initial infringements which preceded the application for the federal trademark registration, but which

---

[1] The series in question does not use the work *cocky* prominently in the title. In addition, the word is used to describe the character in the book, and not the series ("[he is a] cocky cage fighter"). In addition, the books are clearly distinguishable, and the use of the work *cocky* in those books does not create the slightest confusion.
[2] See: Defendants' Joint Memorandum at p. 8.
[3] See: Exhibit 1 herein.
[4] Hopkins Decl.

also was instrumental in prompting said application.  It was also necessitated by the social-media backlash and firestorm from writers. A backlash and firestorm which ensued simply because the Plaintiff Hopkins attempted to enforce her trademarks. A backlash and firestorm which included the publication of an anthology ("Cocktales") which intentionally used the Plaintiffs Word Mark and Stylized Mark as both a means of protest, and as a means to promote and sell that particular book. As well as the present and on-going publication of a myriad of books which now intentionally infringe upon the Plaintiffs Marks.[5] Either in an attempt to associate themselves with #cockygate, the Plaintiff Hopkins and the applicable marks, or, as a means of protest. In any event, these actions necessarily force Hopkins to defend and protect her trademarks[6] thus necessitating the action of this honorable Court.

With regard to the defendant Watson, despite claims of non-involvement, she actively participated in the promotion of Cocktales prior to its publication.[7] A book which was, by its creator's own designation, a "top secret project"[8] To the extent that the motion seeks to enjoin its further use by all participating parties, and as this action was filed when actual information regarding the publisher was in question, it was brought against the Defendant Watson in good faith. And the issue of its on-going sale is, respectfully, ripe for consideration by this Court.

A.      **Defendants Opposition is Insufficient as a Matter of Law**

In opposition to the motion, the Defendants submit four declarations. Two of which are submitted in anonymous pen names. The Defendant Kneupper does not submit any declaration. Instead, he relies upon the submissions of his attorneys.[9] For the reasons stated herein in detail,

---

[5] Examples Exhibit 9 herein.
[6] Examples Exhibit 9 herein.
[7] See Exhibit 6 herein.
[8] The court is respectfully asked to question why this project was specifically created as a "top secret project." See Exhibit 6 herein.
[9] Such a petition to cancel does not require the filing of a sworn statement (see: 37 CFR 2.111).

the Defendants' submissions, as well as the Defendant Kneupper's failure to submit a declaration, are collectively insufficient to defeat the Plaintiffs' motion for a temporary injunction. In regard specifically to the Defendant Kneupper, it is respectfully submitted that his unsworn Petition for Cancellation (hereinafter "Petition") brought before the Trademark Trial and Appeals Board ("TTAB") is an insufficient basis for opposition to both the request for an injunction, and the motion to dismiss the Petition.

## 1.   The Anonymous Submissions

Defendant Crescent has not requested of this Court, prior to her submission, that she be permitted to proceed anonymously. Plaintiffs, as an initial matter, object to her submission, both as matter of practice, and regarding its legal and probative sufficiency. For the same reasons, Plaintiffs object to the Declaration of Penny Reid, also submitted in a pseudonym.

"[T]he presumption of openness in judicial proceedings can be overridden [only] in exceptional circumstances," *Doe v. Smith*, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) (*citations omitted*).

In deciding whether to permit pseudonymous pleading, courts must balance "the plaintiff's right to privacy and security against the dual concerns of (1) the public interest in identification of litigants and (2) the harm to the defendant stemming from suppression of plaintiff's name." *Doe v. Del Rio*, 241 F.R.D. 154, at 157 (S.D.N.Y. 2006).

The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Free Speech v. Reno*, 98 Civ. 2680 (MBM), 1999 WL 47310, at 2 (S.D.N.Y. Feb. 1, 1999).

"There is a significant interest in open judicial proceedings even in ordinary civil litigation between private parties. Private civil suits, individually and certainly in the aggregate, do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms." *Doe v. Del Rio*, supra, at 159.

Courts have found claims to anonymity in the context of allegations of harm insufficient in circumstances where proceeding publicly would cause embarrassment, humiliation, and even economic harm (see: *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) at 324 (allegations of embarrassment insufficient), *Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137, at 142 (S.D.Ind. 1996) (allegations of harm to economic well-being, embarrassment, and humiliation insufficient); *Doe v. Bell Atlantic Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D.Mass. 1995) (allegations of economic harm and embarrassment insufficient). In fact, in *Doe v. Del Rio*, supra, at 162, the Court held, even in the context of horrific abuse, that "the nature of the charged acts, repulsive as they are, [were] not so extreme as to support sufficiently an interest in anonymity."

Here, as set forth herein below, it is submitted that the anonymity of the submissions in opposition are either inadmissible, impermissible, or lack credibility and/or probative value.

## 2.      The Declaration of the Defendant Watson

28 U.S.C. § 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, ***as true under penalty of perjury***, and dated, in substantially the ... form" of the model declaration provided (*emphasis added*).

"Parsing the declaration provided in the statute reveals its substantive elements: the declarant must (1) declare (or certify, verify, or state), (2) "under penalty of perjury, (3) that the

matter sworn to is true and correct." *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, at 488 (2d Cir. 2013) (*internal quotation marks eliminated*).

"Inclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements…U.S.C. § 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury. Any other result would be contrary to the plain language of the statute and the objective sought to be advanced by it," *Id* at 488.

Respectfully, the Declaration of the Defendant Jennifer Watson omits the perjury language required by the statue and therefore is inadmissible as a matter of law. As such, counsel submits that the submission by the Defendant Watson should not be considered in opposition.[10]

### 3.      The Declaration of the Defendant Crescent

The Declaration of the Defendant Crescent is submitted in, and executed using, her pen name. It uses the language required by the statue for execution outside the United States and is dated "Toronto Ontario Canada." The signature is half printed, and half scripted, in what appears to be, to counsel, a possible attempt to conceal the identity of the party signing it.

The reasons given for the necessity of anonymity by the Defendant Crescent are without merit. And should also seriously call in to question the credibility of her submission and her motivations in remaining anonymous. First, the Defendant Crescent, as her attorneys must be aware, will not remain anonymous in this matter for very long.[11] Plaintiffs' counsel intends to immediately issue subpoenas to uncover her identity. As her location and identity is necessary

---

[10] The submitted Declaration of Lauren Beth Emerson, Esq. is sworn to under the penalties of perjury, and specifically cites 28 U.S.C. § 1746. Accordingly, any claim of innocent oversight would seem to be indefensible.
[11] Defendants attorneys have specifically denied any request for her identification. Decl. Christopher Cardillo dated June 1, 2018, at ¶ 1.

for the preparation of the (yet to be issued) summonses in this matter. Second, neither the conservative nature of her family, nor her conclusory allegations of unspecified "competitive and personal harm" are valid reasons to maintain anonymity under the law. Accordingly, the use of anonymity by the Defendant Crescent is best viewed as a potential attempt to conceal relevant facts from this Court. Or, to either evade its jurisdiction and/or avoid the effects of a future judgment.

In addition, as the Defendant Crescent's Declaration is made under a pseudonym, it cannot (and does not) serve as the basis for any impression upon her that she is subject to the specific punishment of perjury by this Court (*In re World Trade Ctr.,* supra). This is especially true as she claims to be a resident of Canada, and any such charge might require active investigation of her identity on the part of the Court.

On the basis of the foregoing, counsel submits that the submission by the Defendant Crescent is inadmissible, or minimally lacks credibility, and, respectfully, that it should not be considered in opposition.

### 4.    The Declaration of the Non-Party Reid

The Declaration of the non-party Penny Reid ("Reid") is also submitted in, and executed using, her pen name. She provides two reasons for her alleged need for anonymity. Both are submitted to be without merit. First, Reid has posted photographs and videos of her children on the internet, which directly contradicts her claim that she "hope[s] to keep their identities anonymous." In this regard, she has, in the past, also listed their ages on the internet[12] All of which were posted using her pseudonym. Second, Reid's claim that there "was" (past tense) some need for anonymity in regard to her "*prior previous* profession as a biomedical researcher,"

---

[12] Plaintiffs' counsel will provide in camera production of evidence of these items upon request of the Court.

is not relevant at the present time. Not only that, but there are numerous pictures and videos of her, all prominently displayed and available on the internet via a simple Google search. These fabricated claims of necessity call in to question the veracity and credibility of Reid, and her submission.

On the basis of the foregoing, counsel submits that the submission by the Defendant Reid is inadmissible, or minimally lacks credibility, and, respectfully, that it should not be considered in opposition

### 5.    The Failure of the Defendant Kneupper to Submit a Declaration

The Defendant Kneupper has filed an *unsworn* Petition before the TTAB. He does not submit any sworn submissions in opposition to the instant motion. Respectfully, the Petition is inadmissible hearsay (see: *United States v. $7,300 in U.S. Currency*, WL 21496858, at 4 (S.D.N.Y. 2003)). "hearsay documents [are] unsworn statements made outside the court, offered to prove the truth of the matter asserted;" citing: Fed.R.Evid. 801(c)).

As such, the Defendant Kneupper has not submitted any probative evidence to this Court that the Petition has merit or validity. To the extent that he relies exclusively on the arguments of his attorneys, he has submitted insufficient opposition to defeat the Plaintiffs motion.[13]

### B.    Plaintiffs have a Clear and Substantial Likelihood of Prevailing on the Merits on all of Their Claims

### 1.    Plaintiff's Claims are not Barred by *Roger v. Grimaldi*

Defendants totally misstate the holding and applicability of *Roger v. Grimadi*. The so-called "Rogers Test," which has evolved from the line of Grimaldi cases, should not be applicable in the case at bar and the facts in this case are clearly distinguishable from the facts in

---

[13] Nevertheless, a discussion of the absolute lack of merit of the Petition itself, and the Defendant Kneupper's lack of standing to maintain the Petition, is included herein.

that line of cases. In those cases, it is important to note that all of the defendants were seeking to use valid trademarks associated with one type of good or services and transplant it as a title to a movie or other creative work. But none of those senior trademarks had acquired secondary meaning or were distinctive as a title associated with the type of creative work they were to be embodied on by the defendants, in the first place. The case at bar is a unique situation since the Word Mark and Design Mark have acquired trademark protection as a title (in a series) already. Accordingly, if this Court, or any court, were to apply the Rogers Test to a situation where the senior mark had acquired trademark protection as a title, it would permit anyone to simply use the title of a well-known television series, movie series or book series in their own work and seek refuge behind the Rogers Test. The result would be to entirely eliminate protection for titles in a series which has been well established since 1956. Furthermore, as a public policy matter, it would serve to stifle free speech rather than enhance it. I respectfully submit, who would brand a television or book series if anyone else could use the title in their own series?

It is worth noting that in the line of Grimaldi cases, despite the concerns for First Amendment, the courts also highlighted the importance of protecting the consumer from confusion. As a result, counsel feels compelled to site and quote from a significant portion of the applicable 2nd Circuit precedent on this issue (I accordingly apologize in advance).

In *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 493–94 (2d Cir. 1989) the court noted, at 494-495, that:

> "[t]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression." (citing: *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir.), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989)). Books are "sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern that warrants some government regulation." (citing: *Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir.1989))"

9

The *Cliff Notes* Court further noted:

> "[In Grimaldi] the claim there was that a title was false or at least misleading because it could be (mis)understood to mean that Ginger Rogers was the subject of the work or that she had endorsed it. This case is not about whether a title is false advertising but whether the appearance of a work's cover is confusingly similar to the trademark elements of an earlier cover."

Similarly, in *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) the Court held:

> "When another's trademark (or a confusingly similar mark) is used without permission for the purpose of source identification, the trademark law generally prevails over the First Amendment. Free speech rights do not extend to labelling or advertising products in a manner that conflicts with the trademark rights of others. In these circumstances, the exclusive right guaranteed by the trademark law is generally superior to the general free speech rights of others. (citing: *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir.1989)).

Not surprisingly, in *Syler v. Woodruff*, 610 F. Supp. 2d 256, 265 (S.D.N.Y. 2009), at 265, the court explained:

> "In Rogers…the court limited the reach of its holding: It cautioned that this standard "would not apply to misleading titles that are confusingly similar to other titles. The public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles" (citation omitted)."

As such, *Rogers* specifically does not apply in this instance. Moreover, the Defendants' arguments concerning the first amendment right to artistically express yourself, to the detriment of a federally register trademark, by using a word like *cocky* in the title of a book, is less than compelling.

### 2.     The Infringing Marks are Actually and Intentionally Misleading.

The contention that "nothing" about the book titles misleads[14] is entirely trumped by an actual side-by-side view of some of the applicable marks and book covers.

*Exhibit 1, Amazon book covers:*



*Exhibit 2, close up of Cocktales and Cocky stylized uses:*



Additionally, "If a plaintiff is seeking only injunctive relief, then there does not need to be evidence of actual confusion." *Versace v. Versace*, 2003 WL 22023946, at 11 (S.D.N.Y. 2003).

> **3.    Plaintiffs' Word Mark is Valid and Enforceable,
> as Plaintiffs have used a common word "cocky" in**

---

[14] Noting also that "[i]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 523 (S.D.N.Y. 2009).

**an "*Arbitrary*" way to describe a *series of
e-book romance novels*.**

"The name for a series… has a trademark function in indicating each book of the series comes from the same source as the others. The name of the series is not descriptive of any one book and each book has its individual name or title" *In re Cooper*, 254 F.2d at 615.

As such, single common words have often been afforded protection in the context of a book series for over 100 years (see: *Estes v. Worthington*, 31 F. 154, 156 (C.C.S.D.N.Y. 1887) "chatterbox").

"An arbitrary term is one that has a dictionary meaning—though not describing the product—like IVORY for soap." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075–76 (2d Cir. 1993) at 1076.

In this matter, in regard to the Word mark, the Plaintiffs have meet both of these criteria. The word cocky is not normally used to describe book. And the Plaintiffs use is limed to a series of books.

Furthermore, even if this Court were to determine that the Word Mark was not arbitrary, at the very least, they are suggestive inasmuch as it would require one's imagination to determine that "Cocky" indicates or implies that it is associated with a romance novel. Accordingly, it should be afforded the same protection as a valid trademark.

### 4.     Plaintiffs' Stylized Mark is Valid and Enforceable, as it is Distinctive in Style and Appearance

The form of the Stylized Mark as used in in the title of her novels, is distinctive in stylized appearance, and therefore strong, *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415 (W.D.N.Y. 2010).

### 5.     Plaintiffs are Likely to Prevail as Against the Defendant Crescent and Watson.

On the basis of the prior memorandum submitted is support, and the augments contained herein, the Plaintiffs are likely to succeed as against both the Defendant Crescent and the Defendant Watson.

> **6.   Plaintiffs are Likely to Prevail as Against
> the Defendant Kneupper**

> **a.   This Court Has Concurrent Jurisdiction over the Petition and
> Should decide the Issues Presented.**

Defendants submit an obscure case in the Third Circuit to justify their allegation that this Court can not stay a petition to cancel a trademark, or decide the issues presented by this action. The precedent in this district is exactly the opposite.

In *Sonora Cosmetics, Inc. v. L'Oreal S.A.*, 631 F. Supp. 626, 629 (S.D.N.Y.), *aff'd sub nom. Sonora Cosmetics v. L'Oreal S.A.*, 795 F.2d 1005 (2d Cir. 1986), a trademark infringement case, the Court held:

> "The issues posed in the administrative proceeding are identical to those raised by
> defendants in their counterclaim in this litigation; questions of the validity of
> trademark registration are within the competence of the district court, and can be
> conclusively determined in this forum. Moreover, the Court notes that the
> Commissioner of Patents has held that, inasmuch as TTAB determinations of the
> validity of registration are merely advisory to the courts, it is preferable for the
> TTAB to stay its own proceedings where parallel litigation occurs in the district
> court."

> **b.   Defendant Kneupper's Petition was
> Made in Bad Faith, is Without Merit,
> and Defendant Kneupper has no
> Standing to Maintain Same.**

"To succeed on its claim to cancel U.S. Trademark Registration [the Defendant Kneupper] must show that (1) it has a 'real commercial interest' in the cancellation—that is, reason to believe it will be harmed absent relief—and (2) valid grounds for cancellation exist." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) at 241.

Defendants submission that this action was brought against the Defendant Kneupper in "New York purely as retaliation" is almost comical, given the fact the Defendant Kneupper has no real stake in this matter, and entirely lacks standing to bring his Petition in the first instance.

The Defendant Kneupper does not write romance novels. He has not submitted (to this Court or in his Petition)[15] a statement that he has actually used the word "cocky" in any of the titles of any of his previously published novels. In fact, a review of his available titles (Amazon.com) indicates he never has used the word "cocky" in any such titles. Defendant Kneupper *exclusively* writes "science fiction" novels. Titles include "They Who Fell" "Chaos Umpire Sits" and "Adversary" "Argonauts:"

*Exhibit 3 Kneupper Amazon book examples:*



Given his failure as to so much as submit a declaration, counsel asks this Court to question whether Defendant Kneupper actually has a good faith belief that he will someday find an actual need to use the word "cocky" in the title of any of his future books. As he has alleged in his *unsworn* Petition. It certainly seems questionable that Defendant Kneupper would ever actually even write a *romance novel* in first instance. No less one in to which he would

---

[15] The Petition itself does not make such an allegation.

14

incorporate the word "cocky" in to the title. Additionally, the Defendant Kneupper has not alleged in his Petition that he will actually ever write a *series* of *romance novels* using the word "cocky" to describe that series.[16] Which, respectfully, is a bare base allegation which should have been included in the Petition.

Given the above, the Court is also respectfully asked to question Defendant Kneupper's motivations in having filed the Petition in the first instance. Although a review of his on line social presence indicates that he claims his intentions are noble and valid[17], it is worth noting that Defendant Kneupper filed his Petition contemporaneous to the release of his latest novel on May 28, 2018.

*Exhibit 4, Knuepper Twitter book release announcement:*



Not surprisingly, he has been giving interviews in which he promotes the sale of that novel and discusses his noble participation in cockygate.[18]

In short, Defendant Knupper seems to have filed his Petition to bolster his on-line image and promote his unrelated science fiction novel. He has no "commercial interest" in this matter.

---

[16] Defendant Kneupper does not even currently have a published *series* of science fiction novels.
[17] Defendant Kneupper has been hailed a "hero" by many in the #cockygate community of protestors.
[18] For example: "A Very "Cocky" Author Part 2.5: Interview with Kevin Kneupper;"
http://booksandquillsmag.com/cockygate-interview-kneupper/

He now he seeks to avoid a determination of the validity of his Petition by this Court solely on basis of his attorneys' submissions, and the misstated precedent therein. He entirely lacks standing, and insults this proceeding by failing to submit a sworn statement. For all of these reasons, the Petition should be dismissed by this Court. Or, minimally stayed pending a determination on the issue of its validity.

**D. Defendants by Their Actions and Submissions are on Notice and have Waived any Defenses Based upon Personal Jurisdiction.**

Plaintiffs' counsel, as an officer of this honorable Court, has a duty to disclose relevant and pertinent information. Their attempt to purposely conceal the true identity of the Defendant Crescent, as well as her location, the submission of a Deceleration in her pen name, all in an attempt to evade the jurisdiction and order of this Court, are all evidence of the Defendant Crescent's continued bad faith.

The Defendant Crescent, under these circumstances of intentional evasion and bad faith, should not be permitted to avoid the consequences of a temporary injunction.

The Defendant Knupper filed a petition to cancel the Plaintiffs Marks, which were (i) held by a Delaware corporation with (ii) a valid business registration in New York, and which (iii) whose principle was known to be a writer who resides in New York. Again, without a real stake in this matter, or standing. Respectfully, Defendant Kneupper should have anticipated this potential result. Any reasonable person would have imagined that a writer who lives in New York, who is faced with a petition attacking her intellectual property, might initiate a suit in this district. Especially someone like Defendant Kneupper, who is a self-proclaimed former patent lawyer.[19]

---

[19] It should be noted that Kneupper has, via his attorneys, rescinded that he is a former trademark lawyer, but instead is a seasoned federal litigator.

*Exhibit 5 Twitter Tweet, Kevin Kneupper:*



Defendant Watson participated in the "top secret project" Cocktales, intentionally and willfully advocating the infringement of the Plaintiffs trademarks, and should be subjected to the personal jurisdiction of this Court.

*Exhibit 6, Socialbutterrflypr.net Cocktales post:*



## E. There is an Inherent Conflict of Interest Created by the use of Cocktales to fund the Defendants Legal Defense.

In my research regarding my reply to the opposition filed by the Defendants, it has come to my attention that the proceeds from the sale of the "Cocktales" book are being used directly to fund the legal defense of the Defendants in this matter (as per the attached). To the extent that

said funds are in fact being used for that purpose, there is a significant conflict of interest in permitting the attorneys who have appeared from continuing.

In the first instance 90% of the proceeds were to be directed to the Romance Writers of America ("RWA").

*Exhibit 7 Amazon.com page for Cockytales:*



At this time, the RWA has specifically posted information on line which confirms they are providing financial assistance to the Defendants.

*Exhibit 8 RWA announcement:*



## F. The Harm to the Plaintiffs is Immediate, On-Going, Irreparable, and Exponential

Respectfully, if this Court denies the Plaintiffs' motions for an injunction, the Plaintiffs will suffer "an injury for which no remedy at law, including an award of damages, is adequate to compensate," *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 432 (N.D.N.Y. 2007) (citing and quoting: *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144,

153 (2d Cir. 1999) ("Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.").

The combined effect of the Cocktales book protest, as well as the online social media campaigns, has opened the flood gates to the use and infringement of the Plaintiffs' Word Mark and Stylized Mark. In all of these recent instances the infringement is clearly intentional. These examples are indicative of the level of infringement which is currently occurring in the market in the past sixty days.

*Exhibit 9 Examples of additional infringement:*



Moreover, "money damages would [also] not be an adequate remedy in this case because of the nature and location of defendant [Crescent]…and locating and attaching assets sufficient to satisfy a money judgment would be exceedingly difficult." *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008). This is especially true since numerous searches have not resulted in any possible identification of the Defendant

Crescent[20], and as she is currently actively seeking to maintain her anonymity and evade the jurisdiction of this Court.

Finally, "there has been no demonstrable prejudice to defendants by the passage of time." *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008). Nor have Defendants demonstrated that there exists any "detrimental reliance upon [which has resulted from Plaintiffs'] inaction" *Id.* at 255.

## II.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Plaintiffs motion should be granted in its entirety.

**Dated: May 25, 2018**
    **Brooklyn, NY**

Respectfully submitted,
Cardillo Law, P.C.

<u>/s/ Chris Cardillo</u>
By: Chris Cardillo (7769)
*Attorney for Plaintiff Faleena Hopkins*
9728 3rd Avenue, Suite 308
Brooklyn, New York 11209
T. 646-398-5025
F. 646-365-8833
C. 347-309-0000
Email: cardilloesq@gmail.com

---

[20] Plaintiffs have a suspicion that the Defendant Crescent is actually, from Wisconsin, But this suspicion has not been verified.